**CASE NO. 25-12664-GG**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**THOMAS CHASTAIN AND JONATHAN V. DUNN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

**PLAINTIFFS-APPELLANTS,**

**V.**

**BLUE LINE SOLUTIONS, LLC,**

**DEFENDANT-APPELLEE**

---

**BRIEF OF APPELLANTS**

---

John C. Bell, Jr. (Ga. Bar No. 048600)
THE BELL FIRM
Post Office Box 1547
Augusta, Georgia 30903-1547
(706) 722-2014
john@bellfirm.net

John B. Manly (Ga. Bar No. 194011)
James E. Shipley, Jr. (Ga. Bar No. 116508)
Manly Shipley, LLP
Post Office Box 10840
Savannah, Georgia 31412
(912) 495-5360
john@manlyshipley.com
jim@manlyshipley.com

COUNSEL FOR PLAINTIFFS-APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1, I hereby certify that the following is a complete list of all trial judges, attorneys, persons, associates of persons, firms, partnerships, or corporations that have or may have an interest in the outcome of this case including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Anderson, Scott E. – Counsel for Appellee

Bell, John C. Jr. – Counsel for Appellants

The Bell Firm – Counsel for Appellants

Blue Line Solutions, LLC – Appellee

Chastain, Thomas – Appellant (deceased)

Dunn, Jonathan V. – Appellant

Freed, Michael – Counsel for Appellee

Freeman Mathis & Gary, LLP – Counsel for Appellee

James, Pamela S. – Counsel for Appellants

Manly, John B. – Counsel for Appellants

Manly Shipley, LLP – Counsel for Appellants

Regnery, Cameron N .– Counsel for Appellee

Shipley, James E., Jr. – Counsel Appellants

Smith Welch Webb & White, LLC – Counsel for Appellee

Story, Hon. Richard W. – United States District Judge, Northern District

Welch, Andrew, J. – Counsel for Appellee

All persons within the proposed class.

 Respectfully submitted this <u>22nd</u> day of October 2025.

<u>*/s/ John C Bell, Jr.*          </u>
John C. Bell, Jr.
Georgia Bar No. 048600
*Counsel for Appellants*

C-2

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs request oral argument. This appeal pertains to a class action for refund of unconstitutional and illegal fines collected by Defendant Blue Line Solutions, LLC (hereinafter "Blue Line") purportedly authorized by O.C.G.A. § 40-14-18 (the "School Zone Electronic Enforcement Statute"). This case presents recurring issues about the imposition of constitutional restraints upon private parties who function as *state actors*. Article III standing for declaratory relief that challenges the constitutionality of O.C.G.A. § 40-14-18, as written and as applied, is authorized by the certainty of future harm in the form of liens imposed on the vehicles owned by Plaintiffs that prohibit the annual renewal of their vehicle tags. This pleading and the district court's order raise issues as to the scope of state-law remedies against private, for-profit businesses that contract with governmental agencies to provide services that are public law enforcement functions and that are paid a percentage of fines collected from those accused of illegal conduct. The record is concise, but the legal issues are complex. Argument should materially aid the Court.

O.C.G.A. § 40-14-80 was enacted by the Georgia legislature in 2018. Similar statutes have been passed in other states. While the statute does not mention privatization, it has been applied almost uniformly by contracts between local governments and private, for-profit corporations such as Blue Line that operate in

i

the name of the local government and its law enforcement agency. Blue Line has numerous contracts with local governments and their police or sheriff's departments throughout Georgia. A handful of other private, for-profit, out-of-state corporations also have a number of contracts with local governments in Georgia. All of these contracts provide for compensation to that private, for-profit entity solely from a percentage of the fines collected by that entity. The payments from the accused are made directly to the private entity. In this case, payments are made to Blue Line at its offices in Chattanooga, Tennessee, with Blue Line receiving all funds collected and in turn disbursing to the local government its portion of these fines, with Blue Line retaining for itself thirty-five percent of the fines it collects, plus other charges.

This privatization of traditional law enforcement and judicial duties with the private entity being paid on a percentage basis has been labeled as *cash-register justice*. Indeed, it is. Public outrage led the House of Representatives of the Georgia Legislature to overwhelmingly vote this year to repeal §40-14-18. However, the Georgia Senate has not so far voted to approve the House bill. This is a matter of great concern to the people of Georgia and to adherence to traditional principles of due process of law guaranteed by the Georgia Constitution and by the Fourteenth Amendment to the United States Constitution.

## TABLE OF CONTENTS

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . c-1

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Judicial Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Statement of Issues Present for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    (i)    Course of Proceedings and Disposition in the Court Below . . . . . . . . . 2

    (ii)    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    The Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    Blue Line . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.    The Parties and Their Claims . . . . . . . . . . . . . . . . . . . . . . . 6

        D.    The Third Amended Complaint . . . . . . . . . . . . . . . . . . . . . . 7

(iii)    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument and Citation of Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        Tallulah Falls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      The District Court Erred in Holding that State Action was not Adequately Pled and Thereby Erred in Dismissing the Third Amended Complaint and the Plaintiffs' Motion to Add Plaintiffs and for Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . 24

II.      Under the Factual Allegations of the Third Amended Complaint, Plaintiffs have Standing to Bring this Action for Refund of Money Paid by Them to Blue Line.  The District Court Erred in Holding Otherwise and Should be Reversed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.    The Facts Alleged in the Third Amended Complaint, Taken as True, Support a Conclusion that Plaintiffs are Subject to Continuing and Future Harm by Blue  Line. They Therefore have Standing to Seek Declaratory Relief. . . . . . . . . 33

IV.    Count II of the Third Amended Complaint Alleges Actionable Misconduct that is Not Derivative of Plaintiffs' Claims that O.C.G.A. § 40-14-18 is Unconstitutional as Written and Applied      . . . . . . . . . . . . . . . . . . 36

V.     The District Court Abused its Discretion by Denying Plaintiffs' Motion for Leave to Amend and Add Additional Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# TABLE OF AUTHORITIES

**CASES:**

*Barnes v. City of Monroe, Ga.,*
 1965 WL 90311 (40-14-1.1Ga., Nov. 30, 1965). . . . . . . . . . . . . . . . . . . . . . . 32

\* *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,*
 531 U.S. 288 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

\* *City of Los Angeles v. Lyons,*
 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

\* *Clay v. Drake,*
 66 Ga.App. 544 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

\* *Dennis v. Sparks,*
 449 U.S. 24 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

*Estate of Fass v. Regions Bank, Inc.,*
 947 F.3d 1352 (11ᵗʰ Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hardaway v. State,* 207 Ga.App. 150 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

\* *Harper v. Professional Probation Services, Inc.,*
 976 F.3d 1236 (11ᵗʰ Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*HM Florida-ORL, LLC v. Governor of Florida,*
 137 F.4th 1207 (11th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

\* *Lewis v. Governor of Alabama,*
 944 F.3d 1287 (11ᵗʰ Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

\* *Lugar v. Edmondson Oil Co., Inc.,*
 457 U.S. 922 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Mack v. USAA Cas. Ins. Co.*,
   994 F.3d 1353(11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Rose v. Mayor, etc., of Thunderbolt*,
   89 Ga.App. 599 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

* *Sentinel Offender SVCS., LLC v. Glover*,
   296 Ga. 315 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Smith v. Morris, Manning and Martin*,
   293 Ga.App. 153 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Thomas v. Farmville Mfg. Co., Inc.*,
   705 F.2d 1307 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 38

*Tupper v. City of St. Louis*,
   468 S.W.3d 360 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

* *West v. Atkins*,
   487 U.S. 42 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-26

* W*iggins v. State*,
   249 Ga. 302 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Worthy v. City of Phenix City*,
   930 F.3d 1206 (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Wyatt v. Hertz Claim Mgmt. Corp.*,
   236 Ga.App. 292 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 37

**FEDERAL STATUTES:**

28 U.S.C. § 1132(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

**STATE STATUTES:**

O.C.G.A. §§ 17-4-23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

O.C.G.A. § 40-5-57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

O.C.G.A.  § 40-6-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

O.C.G.A. § 40-13-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

O.C.G.A.  § 40-13-2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

O.C.G.A. § 40-13-27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

O.C.G.A. § 40-13-54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

O.C.G.A. § 40-14-2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

O.C.G.A. § 40-14-1.1(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

O.C.G.A. § 40-14-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

O.C.G.A. § 40-14-11(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

O.C.G.A. § 40-14-18, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

O.C.G.A. § 40-13-2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

**FEDERAL RULES:**

Fed.R.App.P. 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

**STATE RULES:**

Rule 375-3-4-.01, Rules and Regulations of the State of Georgia . . . . . . . . . . . . . . 21

Rule 375-3-4-.02, Rules and Regulations of the State of Georgia . . . . . . . . . . . . . . 22

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331and 1132(d). This is a Class Action wherein the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, there are more than 100 members of the proposed class, and at least one class member, including Plaintiffs, is a citizen of a different state from Defendant Blue Line. The district court entered final judgment dismissing the Third Amended Complaint on July 10, 2025, that disposed of all parties' claims. *See* Dkt. 57. This Court has appellate jurisdiction under 28 U.S.C. § 1291. Plaintiffs timely filed a notice of appeal under 28 U.S.C. § 2107 and Fed. R. App. P. 4(a).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the Third Amended Complaint or the proposed Fourth Amended Complaint allege facts that would support a legal conclusion that Blue Line Solutions, LLC functions as a "state actor" and is therefore subject to restraints imposed by the Fourteenth Amendment of the United Sates Constitution.

2.    Whether Plaintiffs have Article III standing to assert the Plaintiffs' claim for legal relief in the form of a claim for money had and received to recoup fines allegedly collected illegally by Blue Line from the Plaintiffs and members of the putative Plaintiff Class.

3.    Whether Plaintiffs have Article III standing to seek declaratory relief where the Third Amended Complaint plausibly alleges ongoing and future concrete harm traceable to Blue Line, namely liens and other continuing collection efforts and referral-based registration holds and seeks declaratory relief likely to redress those injuries by constraining Blue Line's own conduct under O.C.G.A. § 40-14-18 and its contracts with local governments to provide services traditionally provided only by governmental law enforcement and judicial entities.

4.    Whether the Third Amended Complaint Alleges Actionable Misconduct that is not derivative of Plaintiffs' claims that O.C.G.A. § 40-14-18 is unconstitutional as written and applied.

5.    Whether the district court abused its discretion by denying leave to amend to add tailored allegations and proper parties for legal and declaratory relief due to the unexpected death of Plaintiff Thomas Chastain.

## STATEMENT OF THE CASE

**(i) Course of Proceedings and Disposition in the Court Below**

This Class Action was filed August 17, 2023.

The district court dismissed the First Amended Complaint for failure to state a claim but recognized Article III standing based on financial injury and the threat of a lien or registration hold. Dkt. 17 at 22–25, 39–40. The district court granted Plaintiffs' Motion for Reconsideration and for Leave to File the Second Amended Complaint. Dkt. 27. Appellants filed the Second Amended Complaint. Dkt. 28. Blue Line again moved to dismiss. Dkt. 33. Appellants filed their Third Amended complaint (Dkt. 39) and simultaneously filed their response to Blue Line's Motion to Dismiss Plaintiffs' Second Amended Complaint. Dkt. 40. The district court denied Blue Line's Motion to Dismiss Plaintiff's Second Amended Complaint as moot. Dkt. 43. Blue Line filed its Motion to Dismiss Plaintiffs' Third Amended Complaint. Dkt. 46. Plaintiffs responded. Dkt. 50. While the motion was pending, Appellants moved for leave to file a Fourth Amended Complaint. Dkt. 53. The Fourth Amended Complaint added Plaintiffs and noted that Plaintiff Thomas Chastain had recently passed away. The district court dismissed Count I of the Third Amended Complaint

2

for lack of standing, dismissed Count II as derivative of Count I and dismissed the case and denied leave to amend and to add plaintiffs. Dkt. 57 at 27–35.

The Notice of Appeal was filed August 4, 2025. Dkt. 60.

## (ii)  Statement of Facts

### A. The Statute

Georgia's School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18, authorizes municipalities to contract with an "agent working on behalf of a law enforcement agency or governing body" to operate automated speed-enforcement systems, to mail notices of violation, and to process payments. O.C.G.A. § 40-14-18(b)(2). The statute caps "fees associated with the electronic processing of a civil monetary penalty" at $25. O.C.G.A. § 40-14-18(b)(1). If a civil penalty is not paid after notice and an opportunity to contest, the "agent or governing body **shall** send a referral to the Department of Revenue," which in turn **will** refuse to renew the vehicle's registration until payment is made. O.C.G.A. § 40-14-18(h)–(i). Funds collected are restricted to "law enforcement or public safety initiatives." O.C.G.A. § 40-14-18(m) (emphasis added).

### B. Blue Line

Appellee Blue Line is a private, for-profit limited liability company that installs and operates school-zone speed-detection radar cameras and manages the end-to-end enforcement workflow under contracts with municipalities and counties,

3

including Tallulah Falls and Chatham County and numerous others in Georgia. Under those agreements, Blue Line prepares and mails what it labels as "Citations" that charge violations and demand payment of fines and "processing fees" and retains 35% of monies collected as its compensation. *See* Dkt. 39, ¶¶ 53–66, 75–81, 109–12 & Exs. H, I; Dkt. 46 at 4–5 (summarizing amounts charged to Dunn and Chastain). These "citations" are not in the form commanded by Georgia law.

Blue Line retains 35% of all funds it collects from recipients of "citations" it issues as a state actor under its contract with Tallulah Falls and Chatham County. Dkt. 39-8, p. 18. Blue Line receives nothing for its "services" if it does not issue a "citation" or if the recipient does not pay. Blue Line, through its uniform contracts with governing bodies, has constructed school zone speed detection systems, decided where to locate these systems, promulgated the administrative procedures under the statute for its "citations," established unauthorized fees for payments of fines, prepared and mailed its "citations" to vehicle owners who were not driving the vehicle Dkt. 39 ¶¶ 10, 15, 18, 28, 55, 63, 82, 88, 106, 107. Blue Line collects payments for its "citations" through an on-line system established by Blue Line for which it charges an additional fee for use by residents who pay on-line. Dkt. 39-3. Blue Line establishes the trial dates and procedures, including continuances, and provides the trial evidence against vehicle owners who contest its "citations." Dkt. 39-1. Blue Line collects fines including extra, unauthorized assessment fees from

4

Georgia residents, and sends notices of delinquencies to the Georgia Department of Revenue to lien vehicles if its "citations" are not paid within 90 days. Dkt. 39-1.

Blue Line determines where to set up the School Zone Electronic Speed Enforcement systems in Tallulah Falls, Chatham County and other governing units. Blue Line has thereby established and is operating illegal speed traps. Dkts. 39-8, 39-9, 39-10 The administrative procedures authored, established and administered by Blue Line deny vehicle owners equal protection and due process to defend the speeding "citations" issued by Blue Line. The actions of Blue Line are implemented through often unqualified but well-meaning public officials in small towns and cities throughout Georgia who have signed contracts with Blue Line to privatize police, prosecutorial, clerical and judicial functions and allow Blue Line through these contracts to receive all payments and make all the rules. Dkt. 39-8.

Blue Line tries to deflect its overreaching practices to operate under the School Speed Zone Enforcement Statute and describes itself as an entity that "merely operates the ASE Systems," which includes the preparation and transmitting of its "Citations" to the registered owners of the vehicles photographed in the course of allegedly violating O.C.G.A. § 40-14-18." Dkt. 46, p. 4.

The Third Amended Complaint and the attached exhibits, including Blue Line's standard contracts, assert that Blue Line is the driving force in the School Zone speed detection process. It acts as law enforcement when issuing its "citations,"

5

collecting and providing evidence against vehicle owners. Dkt. 39 ¶ 62. It acts as a court clerk and as an arm of the judiciary when it schedules and reschedules trial dates and when it collects the statutory fines paid on its "citations," keeping for itself a large percentage of the money it collects, even though such funds are required under the statute to be used otherwise. O.C.G.A § 40-14-18(m). Dkt. 39 ¶ 55.

Under the terms of the contracts between Blue Line and local governments, Blue Line chooses the location of the automated speed zone camera system. "BLS at the request of City shall perform an analysis on selected roadways to determine potential violation rates and assess the most suitable locations for the ASE System equipment." Dkt. 39-8, p. 8.

### C. The Parties and Their Claims

Plaintiff Dunn paid $100 in response to his "citation" from Blue Line (inclusive of the $25 processing fee) plus a $3.90 credit-card charge. Plaintiff Chastain paid $75 by check to Blue Line but refused to pay the additional $25 electronic processing fee. Blue Line continued to demand the unpaid $25 from Chastain. Dkt. ¶¶ 10–17, 72–75; Dkt. 46 at 4–5. The Third Amended Complaint alleges that Blue Line's collection and retention of these sums was illegal. Dkt. ¶¶ 106–15.

The underpinnings of Plaintiffs' claims are that Blue Line has established speed traps from which it is paid on a fee system under uniform contracts with Tallulah

Falls, Chatham County and other local governments throughout Georgia. These contracts establish it as a *state actor* subject to due process restraints for the procedures it has authored and imposed under O.C.G.A. § 40-14-18 to collect fines and penalties from owners of vehicles registered in Georgia. However, O.C.G.A. § 40-14-2(b) provides:

> No county sheriff, county or municipal governing authority, college, or university shall be authorized to use speed detection devices where any arresting officer or official of the court having jurisdiction of traffic cases is paid on a fee system.

Dkt. 39, p. 16, ¶ 24; p. 33, ¶62.

### D. The Third Amended Complaint

Relevant allegations of the Third Amended Complaint include:

54.
Blue Line provides the local governments with the full panoply of duties that are, as a matter of law, the duties of sworn law enforcement officers and court officials.

55.
Blue Line exercises its own discretion as to where to place cameras, the duties to test the systems for accuracy, the operation of the cameras that photograph tags of automobiles, the decision as to which vehicle owners to charge with violations, the preparation of the purported "citations," the collection of monies as penalties for alleged, but non-existent, violations of Georgia law, and the remittance of a portion of the collected funds to the respective local governments. Blue Line is the *de facto* clerk of the Tallalah Falls Municipal Court. Exhibit J.

56.
The establishment of penalties that may be imposed as a consequence of violations of criminal statutes is a legislative function

7

that cannot, by contract, be delegated to a private, for-profit corporation such as Blue Line.

57.

The discretion as to what amount of a legislatively-authorized monetary penalty to impose upon persons convicted of violations of a criminal statute is a judicial function that cannot, by contract, be delegated to a private, for-profit corporation such a Blue Line.

58.

The contracts between Blue Line and Georgia local governments, including the City of Tallulah Falls and Chatham County, do not set the amount of "electronic processing fees" that Blue Line can charge owners of vehicles registered in Georgia. All sums denominated as "electronic processing fees" collected by Blue Line are collected without lawful authority.

59.

Neither Blue Line nor any of its employees are sworn law enforcement officers, nor are they certified to test or to operate speed detection devices in the manner compelled by Georgia law.

60.

Blue Line provides all of the above governmental duties deceptively in the name of the local government that it is not.

61.

Blue Line has wrongfully and deceptively, and without authority, collected funds from the named Plaintiffs and members of the Class that it has retained and applied to its charges for the cost of Blue Line's equipment that are not authorized by O.C.G.A. § 40-14-18, in violation of 18 U.S.C. § 1341 and O.C.G.A. §16-8-3 and Art. 3, Sec. 6, ¶ 6 of the Georgia Constitution.

62.

Blue Line's contracts are void in that they delegate law enforcement and judicial duties to employees of a private, for-profit corporation compensated on a fee system in violation of O.C.G.A. § 40-14-2, the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Due Process Clause of the Georgia

Constitution, Act. 1, Sec. 1, ¶ 1. Blue Line has wrongfully and deceptively, and without authority, collected and retained funds from the named Plaintiffs and members of the Class.

63.

Substantially similar Blue Line contracts provide that Blue Line shall collect and accumulate all payments received under the guise of payments to law enforcement agencies on a monthly basis and provide payment of a portion of the collected funds to the law enforcement agencies on or before the 15th day of the following month. The "citations" issued and mailed, and the collection of the penalties and fees are standardized and automated. The name of the law enforcement agency in the county or municipality under contract is inserted into the "citation" by Blue Line. Although the name of the law enforcement or governmental agency is set forth on the citation, the mailing address for all payments by check are to Blue Line's offices in Chattanooga, Tennessee though such fact is not disclosed by Blue Line. This non-disclosure is deceptive and utilized to extract money from Plaintiffs and Class Members that they do not owe to Blue Line in violation of 18 U.S.C. § 1341 and O.C.G.A §§ 16-8-3 and 16-10-23.

64.

As part of the Automated Speed Enforcement System Agreement, Blue Line assumes responsibility for preparing and mailing the "Notice of Citation" to the registered owner of a vehicle that has been deemed in violation of speeding statutes, even though Blue Line is not a law enforcement agency or an agent of a law enforcement agency or an agent of a governing body as required by O.C.GA. § 40-14-18(b)(2). Its employees are not certified, sworn law enforcement officers trained and certified to test and operate speed detection devices in the State of Georgia.

65.

Blue Line electronically sends to the Tallulah Falls Police Department, the Chatham County Police Department and other local governments, photos of the tags of the cars that it has selected to send its "Notice of Citation" to the car's registered owner. Included with the electronic photos is the speed reported by Blue Line's automated cameras. An employee of the police department is asked to click *yes* or *no* as to whether Blue Line should send the citation. The employee of

9

the police department has no personal knowledge of the information gathered and reported by Blue Line, no knowledge of who might have been the driver of the photographed vehicle and no knowledge of whether the speed detection equipment functioned properly or had been operated properly. The employee of the police department does not have the personal knowledge necessary for issuance of a valid citation or to execute an affidavit with any probative value. This digital approval is a sham.

. . .

67.

Blue Line's camera systems and "Notices of Citations" are a charade, a fraudulent enterprise created and operated to induce owners of vehicles registered in Georgia to mail it checks for $100 or more.

68.

Included on the "Notice of Citation" prepared by Blue Line is a penalty amount and payment instructions. Blue Line does not disclose its name, its involvement or the fact that the solicited payments go to Blue Line and not to the law enforcement agency or local government that is named in the citation as the payee of the solicited "Civil Monetary Penalty" of $100.00. Blue Line thus deceptively hides its identity and illegally impersonates itself as a law enforcement officer in violation of 18 U.S.C. § 1341 and O.C.G.A. § 16-10-23. Blue Line thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiffs and Class Members in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, and 16-10-23.

. . .

75.

Such facts, as set forth above, were not disclosed to Plaintiffs and Class Members, rendering the written statements of Blue Line fraudulent and deceptive. Blue Line has thereby fraudulently and deceptively, and without authority, collected and retained money from Plaintiffs and Class Members not authorized by O.C.G.A. § 40-14-18 and in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, and 16-10-23.

76.

Blue Line deceptively posed  the "Town of Tallulah Falls Police Department" and "The Chatham County Police Department" and affixed an image of a law enforcement badge to the citations without

10

disclosing Blue Line's true identify and without disclosing that a substantial portion of the solicited funds were going to a private, for-profit corporation and not to fund local law enforcement or public safety initiatives, in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clause of the Georgia Constitution.

77.

Plaintiff Thomas Chastain paid $75 of the solicited $100 by check made payable to the Town of Tallulah Falls, but cashed by Blue Line. He has been subjected to additional collection efforts by Blue Line for $25, presumably for a "processing fee" and threatened with referral of his motor vehicle to the Department of Revenue for nonrenewal of the registration and a prohibition of title transfer of such motor vehicle within this state for failure to pay the full amount of the deceptively labeled "Civil Monetary Penalty" that included the unreasonably excessive maximum electronic processing fee.

78.

Although Plaintiff Thomas Chastain paid the civil penalty by check made payable to the Town of Tallulah Falls, but mailed to Blue Line's office, Blue Line included a charge of $25 to electronically process the civil monetary penalty. Blue Line did not disclose that it, and not Tallulah Falls, was cashing the check and retaining at least 35% of the payment. Because Mr. Chastain paid only the civil monetary penalty set by statute, Blue Line fraudulently and deceptively extracted the $75 fine paid by Mr. Chastain and used the U.S. Mail to execute this fraudulent scheme under the guise of being a Georgia governmental entity, all in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clauses of the Georgia and United States Constitutions.

79.

Blue Line, posing as the Town of Tallulah Falls Police Department, mailed the "Final Notice of Nonpayment" of the "Civil Monetary Penalty" to Mr. Chastain in an attempt to collect its unauthorized $25 electronic processing fee. The electronic processing fee is not an enforceable penalty and Blue Line has deceptively issued this notice and caused Mr. Chastain to be referred to the Department of Revenue for nonpayment of Blue Line's unauthorized processing fee in

violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m).

. . .

82.

Under the ASE System agreements, Blue Line determines the locations for the ASE equipment. Upon information and belief, Blue Line does not install the ASE systems in areas with the highest number of school days and highest number of school hour vehicle crashes. Instead, ASE systems are installed in school zones with the highest traffic volume. Blue Line's ASE System agreements have a built-in incentive to maximize the issuance of citations while making public safety a less significant consideration. O.C.G.A. § 40-14-18 specifically provides that the $25 processing fee is to electronically process the civil monetary penalty. It does not provide that the $25 processing fee is for costs to process the citation nor collect revenue. O.C.G.A. § 40-14-18(b)(1)

Dkt. 39, pp. 31-36, 39-42.

Exhibit A to the Third Amended Complaint is a copy of the "citation" prepared by Blue Line and sent to Mr. Chastain accusing him of the speeding violation in Tallulah Falls and demanding a payment $100 by April 24, 2023. The ticket informs him, "If the Civil Monetary Penalty is not paid within 90 days, it will be turned over to the Georgia Department of Revenue and will result in the nonrenewal of this vehicle registration and will prohibit the title transfer of this vehicle within the state of Georgia." It directs Mr. Chastain to send the $100 to: Town of Tallulah Falls, Police Department, 3903 Volunteer Drive, Suite 400, Chattanooga, Tennessee 37416. Beside that address is affixed a copy of a police officer badge for Tallulah Falls, Georgia. At the bottom of the "citation," is a certificate allegedly setting forth facts under oath, "sworn to or affirmed by

12

reviewing officer," with a printed signature of Chief Tonya Elrod, badge 701. Dkt. 39-1. Chief Elrod has confirmed that she was not placed under oath by any officer authorized by law to administer the oath for any of the "citations" prepared and mailed by Blue Line and that Blue Line does not even provide a copy of its "citations," to Tallulah Falls. *Id*. Ms. Elrod has never executed any affidavits verifying any Blue Line "citation."  The words *Blue Line* appear nowhere on the "citation."

Exbibit B is a copy of the check written by Mr. Chastain payable to the Town of Tallulah Falls but mailed to Blue Line's office in Chattanooga. Dkt. 39-2.

Exhibit C is a copy of the "Second Notice of Citation" prepared and mailed by Blue Line to Mr. Chastain. It contains similar information as Exhibit A. Dkt. 39-3.

Exhibit D is a copy of a "Final Notice of Unpaid Civil Monetary Penalty" prepared by Blue Line and sent to Mr. Chastain demanding payment in the name of the Town of Tallulah Falls Police Department but to be sent to Blue Line's office in Chattanooga. Dkt. 39-4.

Exhibit E is a copy of the "citation" prepared by Blue Line and sent to Johnathan Dunn, demanding payment of $100 by December 8, 2022. The payment is to be mailed to Blue Line's office in Chattanooga, Tennessee, though the "citation" identifies the payee as Chatham County Police Department, 3903

Volunteer Drive, Suite 400, Chattanooga, Tennessee. To the left is a purported copy of a badge for the Chatham County Police Department. It contains the same notices that if unpaid, the matter **will** be sent to the Department of Revenue, and a lien will be imposed that **will** prevent renewal of Mr. Dunn's tag. Dkt. 39-5. (emphasis added).

Exhibit F is a copy of confirmation of payment by credit card in the mount of $103.90 for the "citation" described in Exhibit E. Dkt. 39-6.

Exhibit G is a copy of O.C.G.A. § 40-14-18. Dkt. 39-7.

Exhibit H is a copy of the contract between Blue Line and the City of Tallulah Falls. It provides that portions of payments, "shall be 35% of all paid Notices of Liabilities. No fees will be paid to the agency for non-paid violations." Dkt. 39-8.

Exhibit I is a copy of the contract between Blue Line and Chatham County. It provides that, "BLS's portion shall be 35% of all paid Notice of Liabilities. No fees or charges will be assessed to the agency for non-paid violations." Dkt. 39-9.

Exhibit J is a copy of provisions published purportedly by Tallulah Falls describing its Photo-Enforced School Zone Citation Information. It directs that, "All questions concerning these citations should be directed to 1-855-252-0086," a phone number answered by employees of Blue Line, though that fact is not disclosed to callers. The website further provides, "We cannot accept payments at City Hall and have no way to apply a payment to your account. You may call the payment

14

processing center at 855-252-0086 to speak with an agent and pay with a debt or credit card." The website further provides, "Please be aware that the processing center is located in Chattanooga, TN." Dkt. 39-10.

### (iii) Standard of Review

Dismissals under Rules 12(b)(1) and 12(b)(6) are reviewed *do novo*, accepting well-plead factual allegations as true and drawing reasonable inferences in the plaintiff's favor. *Estate of Fass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). The denial of leave to amend is reviewed for abuse of discretion, but "outright refusal to grant the leave without any justifying reason" is an abuse of discretion and a question of law. *Thomas v. Farmville Mfg. Co., Inc.*, 705 F.2d 1307 (11th Cir. 1983).

### SUMMARY OF THE ARGUMENT

The allegations of the Third Amended Complaint set forth claims founded in Georgia law that, if proved, would support a judgment in favor of Plaintiffs under which they recover from Blue Line all funds that they have paid to Blue Line. The district court has jurisdiction to adjudicate this claim.

The allegations of the Third Amended Complaint, viewed in light of controlling decisions of the United States Supreme Court, support, if not compel, a conclusion of law that Blue Line is a *state actor* in its operations under contracts with local governments and their law enforcement agencies. Plaintiffs, therefore,

have Article III standing to assert their claim for declaratory relief founded on provisions of the Fourteen Amendment to the United States Constitution and the Bill of Rights of the Georgia Constitution. A favorable decision in favor of Plaintiffs as to the constitutionality of O.C.G.A. ¶ 40-14-18, and as applied through Blue Line's contracts with local governments in Georgia, would redress Plaintiffs' grievances by further supporting their monetary claims and by putting Blue Line out of business in Georgia.

The district court erred in holding that Plaintiffs lacked standing to bring these claims.

The district court further erred in denying Plaintiffs' motion for leave to amend the complaint and to add parties plaintiff, and to dismiss Thomas Chastain as a plaintiff due to the fact that Mr. Chastain has passed away.

## ARGUMENT AND CITATIONS OF AUTHORITY

### Introduction

We first examine O.C.G.A. § 40-14-18, a statute enacted by the Georgia legislature in 2018. The statute is similar to statutes proposed in other states to privatize aspects of traditional law enforcement, with the private companies being paid on a commission basis, reaping millions of dollars of what should be public funds and that a private, for-profit company may not lawfully receive and hold. *E.g., Tupper v. City of St. Louis*, 468 S.W.3d 360 (2015).

16

This statute is an interesting example of legislative craftsmanship. Various provisions are included so as to maximize profit for private for-profit corporations, encourage prompt payment, deter judicial oversight, shift the burden of proof to the accused, reduce the burden of proof to a preponderance of the evidence rather than beyond a reasonable doubt and avoid protections accorded by statutory and constitutional provisions uniformly afforded to one accused of wrongdoing.

The statute on its face purports to enforce Georgia's criminal statutes regarding speeding. O.C.G.A. § 40-14-18(a)(1). However, O.C.G.A. §§ 40-14-18(b)(1), (b)(2)(A), (b)(2)(G), (c), (d), (f), (g), (h) and (l) label the fine for speeding to be, "a civil monetary penalty," though it is in fact and law just as much a fine as any fine leveled in a real court against one found guilty of violating a misdemeanor speeding statute. This ruse of labeling a $75 fine as only a "civil monetary penalty" is obviously intended to provide a legal fiction to support other provisions in the statute, such as liability being determined upon a "preponderance of the evidence" standard rather than the beyond a reasonable doubt standard. *See* O.C.G.A. § 40-14-18(b)(4).

The statute shifts the burden of proof to the accused by requiring an affidavit from a certified police officer that allegedly provides "prima face evidence" of guilt.

> (3) Proof that a motor vehicle was operated in disregard or disobedience of the speed limit of the marked school zone shall be evidenced by photographically recorded images. **A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law**

**enforcement agency and stating that, based upon inspection of photographically recorded images, a motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law shall be prima-facie evidence of the facts contained therein**;

O.C.G.A. § 40-14-18(b)(3) (emphasis added).

This requirement of a sworn affidavit from the police officer is analogous to sworn affidavits made on personal knowledge that are submitted with a motion for summary judgment in a civil case that can shift the burden of proof to the non-movant. *E.g., Smith v. Morris, Manning and Martin*, 293 Ga.App. 153, 160 (2008). Thus, the requirement of a sworn statement of a certified police officer that establishes guilt is essential to even arguably support the purported shift in the burden of proof to the accused.

The statute further provides that those convicted under the statute will not have points assessed against their driver's licenses that our law requires for convictions of speeding statutes. Compare O.C.G.A. § 40-14-18 with O.C.G.A. § 40-5-57. This provision of § 40-14-18 is obviously included for two purposes. One is to provide support for the contention that the alleged violators are not being punished for a violation of *criminal* law and with the lack of points being used to support the contention that the penalties of § 40-14-18 are merely *civil* in nature. Secondly, the accumulation of points on one's driver's license for traffic law violations is a strong incentive for most drivers not to speed because accumulated

18

points can readily result in increased liability insurance charges, cancellation of liability insurance coverage and, with enough points, loss of one's driver's license. Points imposed for violations of traffic laws are a strong incentive that promotes safe driving. The absence of points does not discourage speeding. The absence of points discourages challenges to the $75 fine and further supports the conclusion that § 40-14-18 was crafted to generate money, lots of money, for private, for-profit corporations and the towns with which each contract, and nothing more.

Most notable is the fact that those accused of violations under O.C.G.A. § 40-14-18 are the registered *owners* of motor vehicles and not the ones driving the vehicle at the time of the alleged infraction. O.C.G.A. § 40-14-18(a)(1). However, there is no statute that imposes criminal sanctions on the registered owners of vehicles just because the unidentified person driving the car, be it a family member, friend or employee, drives too fast. *See* O.C.G.A. § 40-6-1. This flaw alone should be a fatal flaw in the statute.

Also notable in the statute is the enforcement provision that encourages most owners of vehicles to pay the $75 fine without contest. Failure to pay the fine results in a lien being placed on the owner's vehicle that prevents the owner from being able to use the vehicle as collateral for a loan or to renew one's tag. O.C.G.A. § 40-14-18(g), (h). A Georgian not paying the "civil monetary penalty" will, within months, have to relegate his or her vehicle to his driveway or back yard. It is notable that the

statutes that make speeding illegal and a misdemeanor do not include the penalty of loss of use of one's vehicle. O.C.G.A. § 40-6-1. This potential punishment is clearly criminal in nature and thus supports the conclusion that the penalties imposed under O.C.G.A. § 40-14-18 are criminal penalties, contrary to the words of the statute.

Several sections of O.C.G.A. § 40-14-18 provide that an "agent" may be employed to *mail* the various notices called for by this statute. O.C.G.A. § 40-14-18(b)(2), (g), (h) and (l). The statute provides that "citations" can be *mailed* to the alleged violator instead of the requirement of personal delivery by a law enforcement officer for *bona fide* citations. Compare O.C.G.A. § 40-14-18(e) with O.C.G.A. § 40-13-2.1.

O.C.G.A. § 40-14-11 was amended in conjunction with the passage of O.C.G.A. § 40-14-18. 40-14-11 relates to the definition of speed traps. That statute was amended to provide that these so-called "civil penalties" are not to be considered when calculating whether a municipality is collecting so much of its funds from alleged violations of speeding laws that it is to be labeled a speed trap. *Id.* We learn in high school that a rose by any other name would smell just as sweet. A small town dependent upon "civil monetary penalties" extracted from the registered owners of vehicles whose vehicles have passed through the town is as much a speed trap as a town dependent upon fines paid by drivers stopped for speeding.

It is notable what is not contained in O.C.G.A. § 40-14-18. The statute does

20

not provide that a private, for-profit corporation can prepare and issue citations for violations of law. The statute does not provide that private, for-profit corporations can share in the "civil penalties" collected under the statute. The statute does not provide that a private, for-profit corporation that administers 40-14-18 can be paid on a contingency basis. O.C.G.A. § 40-14-18 does not provide that an out-of-state private, for-profit corporation can receive public funds in the form of fines paid for alleged violations of Georgia's speeding laws and that it can hold those funds. O.C.G.A. § 40-14-18 does not provide that a private, for-profit corporation can function as a clerk of court for purposes of administering cases charging violations of 40-14-18. The statute does not provide that employees of a private, for-profit corporation can function as law enforcement officers enforcing the provisions of 40-14-18. The statute does not provide that a private, for-profit corporation can be the sole repository of all records of violations and payments for alleged violations of 40-14-18. The statute does not amend statutes that designate who can issue valid citations, how valid citations must be delivered to the accused and that the accused must sign a citation. O.C.G.A. §§ 17-4-23(a)(1); 40-13-2.1. The statute does not amend statutes and regulations that establish the form of citations, statutes regarding the filing of citations, statutes that require that records of citations are public records, and statutes and regulations providing that copies of citations include the disposition of the asserted charge. O.C.G.A. §§ 40-13-1; 40-13-27; 40-13-54; Rule 375-3-4-.01,

21

.02, Rules and Regulations of the State of Georgia.

**Tallulah Falls**

Tallulah Falls has a population of 283 residents based upon the 2020 U.S. Census. The city budgeted $125,425 for its police department for 2023. Dkt. 39, pp. 25-26, ¶ 45. The town is approximately 8 square miles. According to the a public news report, since implementation of the camera system in 2020, Blue Line has mailed 65,267 citations generated from its single school zone camera location. Tallulah Falls' revenue has exceeded $3,028,529.90 for this *one* location that is installed on U.S. 441 in a location Blue Line purportedly determined was needed for *school safety*. Dkt. 23-1, pp. 2-7. The popular travel website, *Tripadviser*, warns travelers that this location is a speed trap. Dkt. 23-1, pp. 9-10.

There are two school buildings on roads that intersect with U.S. 441 not far from Blue Line's camera system on U.S. 441 in Tallulah Falls. There is no pedestrian school path along U.S. 441 that provides access to either school. There is no foot traffic to the schools. There are no curb cuts that allow cars to enter or exit either school from U.S. 441. Tallulah Falls School is about one-half mile from U.S. 441 and is not visible from U.S. 441. Dkt. 39, pp. 25-26, ¶ 45. It is accessed through a public road off U.S. 441 named School Road. Tallulah Falls Middle School is accessible only through a public road named Tallulah Falls Scenic Loop. There is no drop off or pick up location on U.S. 441 for either school. Dkt. 23-1, pp. 12-13.

Blue Line has established a speed trap in Tallulah Falls from which Blue Line retains 35% of every paid "citation" in addition to a flat rate electronic processing fee of $25. Dkt. 39-8, p.13. Blue Line's revenue has exceeded $1.6 million for this one camera location in a town with less than 300 residents. Drivers of rented vehicles and out-of-state drivers are exempt from the statute and citations. O.C.G.A. § 40-14-1.1(3) (definition of owner under the statute); Dkt. 39, p. 24, ¶ 43. This is automation for revenue and not for safety.

O.C.G.A. § 40-14-11(d) protects citizens from speed traps. It caps traffic fines collected by towns to dissuade operation of speed traps. There is a presumption that law enforcement is using speed detection devices for purposes other than public safety if the fines levied are equal to or greater than 35% of a municipal or county law enforcement agency's budget. Interestingly, the automated school zone camera revenue collected under O.C.G.A. § 40-14-18 is expressly *not to be counted* in this calculation. O.C.G.A § 40-14-11(d). Dkt. 39, pp. 24-25, ¶ 44. The statute, as written and applied, allows Blue Line, a private, for-profit company, to establish speed traps that intentionally avoid statutory protections against policing for profit.

Blue Line argues that it is protected from legal responsibility because it has a contract with Tallulah Falls (a contract that Blue Line authored, prepared, promoted, and marketed to the town of Tallulah Falls) that allegedly sanctions all of its actions. Dkt. 46, p. 18. Blue Line's contracts with Tallulah Falls and other governing bodies

throughout Georgia do not insulate it from a constitutional challenge to the way it is promulgating the administrative roadmap for Georgia residents who receive one of its "citations."  Blue Line's roadmap creates speed traps that police for profit and impose procedures that deny due process to owners of vehicles who receive a Blue Line "citation". Plaintiffs' Third Amended Complaint sets forth valid causes of action for return of all funds collected and retained by Blue Line, an out- of-state, for-profit corporation that has been unjustly enriched.

## I.

### The District Court Erred in Holding that State Action was not Adequately Pled and Thereby Erred in Dismissing the Third Amended Complaint and the Plaintiffs' Motion to Add Plaintiffs and for Leave to Amend.

The controlling appellate decisions interchangeably use the terms, "state actor," "state action" and activities "under color of state law." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 928 (1982), wherein the Court held:

> In *United States v. Price*, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 1157 n.7, 16 L.Ed.2d 267 (1966) , we explicitly stated that the requirements were identical: "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.

*Id.*

> Similarly, it is clear that in a § 1983 action brought against a state official, the statutory requirement of action "under color of state law" and the "state action" requirement of the Fourteenth Amendment are identical.

*Id.* at 929.

The Court further held:

> The Court suggested that that "something more" which would convert the private party into a state actor might vary with the circumstances of the case. This was simply a recognition that the Court has articulated a number of different factors or tests in different contexts: *e.g.*, the "public function" test, see *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ; *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ; the "state compulsion" test, see Adickes v. S. H. Kress & Co., 398 U.S. at 170, 90 S.Ct. at 1615; the "nexus" test, see *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) ; and in the case of prejudgment attachments, a "joint action test," *Flagg Brothers*, 436 U.S., at 157, 98 S.Ct., at 1734 .
>
> . . .
>
> Turning to this case, the first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority. The second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as "state actors."

*Id.*, at 939.

Here, Blue Line is clearly a *joint actor* with the local governments with which it has contracted to enforce the School Zone Enforcement Statute, with Blue Line being the dominant actor. Enforcement of traffic laws is clearly a "public function." Demanding payment of fines and taking action in the form of imposing liens that bar renewal of one's car tag are forms of "state compulsion."

In *West v. Atkins*, 487 U.S. 42 (1988), the Court held that a doctor under contract to provide medical services on a part-time basis to inmates of a North Carolina state prison was a *state actor* because he was performing a service that

25

under North Carolina law the State was required to provide to inmates of its prisons.

The Court held:

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941) . Accord, *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (adopting *Classic* standard for purposes of § 1983) (overruled in part on other grounds, *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 695–701, 98 S.Ct. 2018, 2038–2041, 56 L.Ed.2d 611 (1978) ); *Polk County v. Dodson,* 454 U.S. 312, 317–318, 102 S.Ct. 445, 449, 70 L.Ed.2d 509 (1981) ; *id.,* at 329, 102 S.Ct., at 455–456 (dissenting opinion).

*Id*. at 49.

> The Court concluded:

> North Carolina employs physicians, such as respondent, and defers to their professional judgment, in order to fulfill this obligation. By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obliged to treat prison inmates, such as West. He does so "clothed with the authority of state law." *United States v. Classic,* 313 U.S., at 326, 61 S.Ct., at 1043. He is "a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.,* 457 U.S., at 937, 102 S.Ct., at 2754.

*Id.* at 55.

Here, Blue Line has contracted with local governments to provide law

enforcement services, with Blue Line "clothed with the authority of state law." *Id*.

In *Dennis v. Sparks*, 449 U.S. 24 (1980), the Court held:

> As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the

26

> defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see "under color" of law for purposes of § 1983 actions. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966) .

*Id.* at 27-28.

Here, Blue Line has "jointly engaged with" local government officials in enforcing the state law challenged by this lawsuit.

The U.S. Supreme Court has further identified activities by which an entity that is not a governmental entity nonetheless becomes a *state actor* subject to the restraints imposed by the United States Constitution:

> Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," *Blum,* 457 U.S., at 1004, 102 S.Ct. 2777, when the State provides "significant encouragement, either overt or covert," *ibid.,* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar, supra,* at 941, 102 S.Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) *(per curiam),* when it has been delegated a public function by the State, cf., *e.g., West v. Atkins, supra,* at 56, 108 S.Ct. 2250; *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627–628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) , when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," *Evans v. Newton,* 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) .

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288,

27

296 (2001).

Here, Blue Line exercises "coercive power" when it sends its "citations" demanding money and when it sends notices to the Georgia Department of Revenue to lien the titles of vehicles of Georgians who have not paid the Blue Line all that it has demanded.

In *Harper v. Professional Probation Services, Inc.*, 976 F.3d 1236 (11th Cir. 2020), this Court held that a private, for-profit corporation providing probation services under contract was functioning as a quasi-judicial officer subject to due process restraints. Blue Line's exercise and control of traffic laws for the town of Tallulah Falls and others is likewise subject to the constitutional restraints of a state actor.

As alleged in the Third Amended Complaint, Blue Line operates under contracts with local governments and their law enforcement agencies to administer the School Zone Electronic Enforcement Statute, selecting the sites for the speed detection devices, testing the devices, selecting who to charge with violations, preparing the "citations," mailing the "citations," soliciting payments of fines, directing that fines are to be paid to Blue Line's offices in Chattanooga, Tennessee, all in the name of the municipality or law enforcement agency with which it has contracted. These are all traditional functions of public law enforcement agencies being delegated to Blue Line by contract and thus make Blue Line a *state actor*

subject to Fourteenth Amendment restraints.

Blue Line's collection and retention of fines, maintenance of court records and control of court calendars are traditional public functions of clerks of courts, further supporting the legal conclusion that Blue Line is a *state actor*.

Blue Line collects and retains fines imposed by a municipal court judge. Blue Line prepares and sends to the Georgia Department of Revenue the notice that an accused has not paid to Blue Line the fine solicited by Blue Line in its "citation" that results in a lien being imposed on the vehicle registered to the accused. An accused can get Blue Line to send a new notice to the Department of Revenue by paying to Blue Line the fine it has demanded. Blue Line does all these things in the name of the local government with which it has contracts. It is thus "clothed with the authority of state law." *Id*. at 49.

Under the cited allegations of the Third Amended Complaint and the decisions of the U.S. Supreme Court cited above, Plaintiffs have alleged facts that support a conclusion of law that Blue Line is a *state actor* subject to the restraints of the Fourteenth Amendment to the United States Constitution. The district court erred in holding otherwise and should be reversed.

29

## II.

## Under the Factual Allegations of the Third Amended Complaint, Plaintiffs have Standing to Bring this Action for Refund of Money Paid by Them to Blue Line. The District Court Erred in Holding Otherwise and Should be Reversed.

Count II states a class-wide claim for money had and received under Georgia law. Georgia permits recovery when: (1) defendant holds money that in equity and good conscience belongs to plaintiff; and (2) plaintiff has made demand and been refused. *Wyatt v. Hertz Claim Mgmt. Corp.*, 236 Ga. App. 292 (1999). Both elements are satisfied here.

In the Third Amended Complaint, Plaintiffs sue Blue Line for return of money paid by Plaintiffs and class members to Blue Line. A favorable decision on these claims will result in money being paid to Plaintiffs.

> To establish standing, plaintiff must have: '(1)suffered an injury in fact, (2) that is *fairly traceable* to the challenged conduct of the defendant, and (3) that is *likely to be redressed* by a favorable judicial decision.'

*Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016).

In its Order of April 16, 2024, in this case, the district court held:

> Blue Line's arguments would be more forceful absent the threat of a referral to the Georgia Department of Revenue for nonpayment. The threat of incurring a lien in the event of nonpayment is likely sufficient to confer standing.

> In addition to the contention that Blue Line lacked the authority to collect and process payment, Plaintiffs complain that Blue Line's failure to disclose its role (i.e., Blue Line receiving payment and depositing in a Blue Line bank account) as well as the nature of the fees

30

being assessed (i.e., percentage-based versus actual cost of processing) was deceptive and led to payment by Plaintiffs and others similarly situated.6 Plaintiffs allege that Blue Line's less than transparent operation amounted to a fraud. These facts are sufficient to show a causal connection between the asserted financial injury and Blue Line's conduct.

For these reasons, the Court finds that Article III standing, in fact, is sufficiently alleged to prosecute at least one of the causes of action within the CAC.7 The Court next turns to the Rule 12(b)(6) arguments.

Dkt. 17, pp. 21-22.

It is without dispute that Plaintiffs and Class Members have paid money to Blue Line that Blue Line received by posing as a local government or its law enforcement agency, charging the Plaintiffs with violations of law and demanding payment of a designated fine. Dkt. 39-4, 39-5. The allegations of the Third Amended Complaint charge that the operative statute that Blue Line purports to enforce is unconstitutional as written and as applied by Blue Line under its contracts with local governments. It is further alleged that Blue Line's standard procedures exceed the authority that it is authorized to exercise under the statute and under its form contracts. It is further alleged that Blue Line disregards clear commands of O.C.G.A § 40-14-18.

In *Sentinel Offender SVCS., LLC v. Glover*, 296 Ga. 315 (2014), the plaintiff sued, on behalf of himself and a class, for monies paid to Sentinel, a private, for-profit corporation providing probation services to courts in the Augusta Judicial Circuit. The defendant had challenged the right of the plaintiff to recover money

31

paid to the defendant in his action for money had and received. The Supreme Court held:

> In general, we agree with the trial court's determination that a cause of action based on the theory of money had and received could be brought against Sentinel to recover probation supervision fees which it unlawfully collected from misdemeanor probationers in contravention of the dictates of the private probation statutory framework approved by the Georgia legislature.

*Id.*, at 331.

Georgia courts hold that a party who has paid fines that are later determined to have been illegally collected may sue for and recover those payments from the party to whom the funds were paid. *Rose v. Mayor, etc., of Thunderbolt*, 89 Ga.App. 599 (1954); *Clay v. Drake*, 66 Ga.App. 544 (1942) (fine recovered by claim for money had and received). *See Barnes v. City of Monroe, Ga.,* 1965 WL 90311 * 1, (M.D. Ga., Nov. 30, 1965) (citing *Drake* and *Rose* as support for this claim for return of fines under Georgia law).

This Court's decision in *Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2018), supports reversal of the decision of the district court. The plaintiffs complained that their employers had underpaid them, but sued officials of the State of Alabama and the City of Birmingham, challenging the constitutionality of a state statute. This Court held that their alleged injuries were not redressable because they had not sued their employers. *Id*. at 1395.

Here, Plaintiffs have sued the party who took their money and who should be

compelled to give it back if Blue Line's taking was unlawful as is alleged.

Under the alleged facts and the legal contentions made by Plaintiffs in their Third Amended Complaint, Plaintiffs have established both injury in fact fairly traceable to the challenged conduct of the Defendant and that the injury will be redressed by a favorable judicial decision. The named Plaintiffs and Members of the Plaintiff Class have standing to sue Blue Line for a refund of fines solicited by Blue Line and paid to Blue Line. The district court erred in holding to the contrary. Its decision should be reversed.

## III.

### The Facts Alleged in the Third Amended Complaint, Taken as True, Support a Conclusion that Plaintiffs are Subject to Continuing and Future Harm by Blue Line. They Therefore have Standing to Seek Declaratory Relief.

The Third Amended Complaint alleges two distinct types of ongoing, concrete injuries that satisfy Article III. First, Blue Line continues to pursue collection of the unpaid $25 processing charge from Mr. Chastain through ongoing demands and threats of enforcement action. Dkt. 39, ¶¶ 10-17, 72-75. This ongoing collection activity constitutes a present and continuing injury, not a speculative future harm.

Second, and critically, the Third Amended Complaint alleges that Blue Line sends notices to the Georgia Department of Revenue of the names of those who have not paid fines solicited by Blue Line that automatically trigger registration holds that prevent renewal of the tag of the owner's vehicle pursuant to O.C.G.A. § 40-14-

33

18(h)-(i). This is not a hypothetical chain of events requiring a Plaintiff to violate the law again. It is a present, ongoing consequence flowing directly from existing citations. The threat of imminent referral and resulting registration hold creates a "credible threat of enforcement" that establishes injury-in-fact. See *HM Florida-ORL, LLC v. Governor of Florida*, 137 F.4th 1207, 1217-1218 (11th Cir. 2025).

A declaratory judgment addressing the constitutionality and legality of Blue Line's authority under O.C.G.A. § 40-14-18 and its form contracts with local governments will provide meaningful redress. First, it would directly constrain Blue Line's ability to collect unauthorized fees and continue enforcement actions. Second, because Blue Line operates as the statutory "agent" under O.C.G.A. § 40-14-18(h), a declaration limiting its authority would prevent it from initiating referrals to the Department of Revenue.

Importantly, redressability requires only a "substantial likelihood" that the injury will be redressed, not certainty. *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021). Here, a declaration that Blue Line lacks authority to collect its fines or make Department of Revenue referrals would cause Blue Line to cease those practices, providing the redress that Plaintiffs seek. Its form contracts so provide:

> Either party shall have the right to terminate this Agreement by written notice:
>
> . . .
>
> II)  If applicable law is changed so as to prohibit or substantially

34

> interfere with the operation or feasibility of the ASE System or the parties' obligations under this Agreement.

Dkt. 39-8, p. 3.

The practical effect of declaratory relief against Blue Line is demonstrated by the integrated nature of the enforcement scheme: Blue Line controls the payment system, maintains the violation records, and triggers enforcement consequences. A declaration governing its conduct would necessarily affect the entire enforcement chain.

The district court's reliance on *Worthy v. City of Phenix City*, 930 F.3d 1206 (11th Cir. 2019) fundamentally misapprehends the nature of Plaintiffs' continuing and future injuries. *Worthy* involved plaintiffs who had fully resolved past citations and sought prospective relief against potential future violations. The Eleventh Circuit found no standing because any future injury would require the plaintiffs to voluntarily choose to violate traffic laws again. *Id.* at 1216.

Here, by sharp contrast, Plaintiffs face ongoing injuries from existing unresolved citations. Mr. Chastain continued to face collection demands for the unpaid processing fee, and both Plaintiffs remain subject to Blue Line's control of referrals to the Georgia Department of Revenue. These are not speculative future injuries dependent on new voluntary illegal conduct. They are present, ongoing consequences of past citations that remain unresolved. This critical distinction places this case squarely outside of *Worthy's* holding.

*City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), is on point, wherein the Court distinguished between past injuries (insufficient for prospective relief) and ongoing enforcement actions (sufficient for standing). Because Appellants face ongoing enforcement actions from existing citations, they have standing to seek declaratory relief.

The district court erred in dismissing Count I.

## IV.

### Count II of the Third Amended Complaint Alleges Actionable Misconduct that is Not Derivative of Plaintiffs' Claims that O.C.G.A. § 40-14-18 is Unconstitutional as Written and Applied.

Count II incorporated the allegations of paragraphs one through ninety-seven. Dkt. 39, p. 54. These paragraphs set forth, *inter alia*, that Blue Line ignored material commands of the statute, such as the requirement of verification by a sworn law enforcement officer of the factual support of each alleged violation. *Id.*, ¶¶ 11, 18, 36, 37, 38, 39, 65. Blue Line's written statements in its "citations" that falsely assert otherwise are alleged to be fraudulent. *Id.*, ¶¶ 10, 11, 15, 18, 67, 75.

The incorporated paragraphs set forth the fact that the radar systems used by Blue Line do not meet the commands of Georgia law. *Id.*, ¶¶ 1, 59, 64, 66. Radar used as evidence of speeding is inadmissible if all requirements of Georgia law have not been met. "Evidence of speed gained by … use of a radar speed detection device is admissible *only* if the state introduces evidence establishing its compliance with

36

*each* of the conditions of admissibility imposed upon such evidence by the General Assembly." W*iggins v. State*, 249 Ga. 302, 306 (1982). The Department of Public Safety certification of a speed detection device utilized to issue citations is required. *Hardaway v. State*, 207 Ga.App. 150, 151 (1993).

Other incorporated paragraphs set forth other fraudulent representations by Blue Line. *Id.*, ¶¶ 1, 12, 15, 17, 28, 39, 60, 61, 67, 68, 69, 71, 75, 76, 78, 79, 80, 81.

Allegations incorporated into Count II assert that Blue Line's actions were beyond those authorized by Georgia law, including O.C.G.A. § 40-14-18. *Id.*, ¶¶ 1, 10, 11, 15, 28, 32, 34, 56, 57, 58, 61, 71, 74, 80, 82.

Proof of any or all of the above-cited allegations would support a conclusion that Blue Line has wrongfully and unlawfully collected money from Plaintiffs that "in equity and good conscience" Blue Line should return to them. *Wyatt, supra*. Neither a finding of unconstitutional conduct nor *state actor* status would be required.

The district court erred in holding that these allegations are "derivative of Plaintiffs' constitutional challenge." Dkt. 57, p. 33.

**V.**

**The District Court Abused its Discretion by Denying Plaintiffs' Motion for Leave to Amend and Add Additional Plaintiffs.**

The district court's denial of leave to amend constituted an abuse of discretion. This is Plaintiffs' Third Amended Complaint, but the constitutional challenge in

Count I was newly added. The district court dismissed this new claim on standing grounds without giving Plaintiffs an opportunity to cure the alleged deficiencies. The district court offered no justification for denying amendment, which constitutes reversible error. *Thomas v. Farmville Mfg. Co., Inc.,* 705 F.2d 1307 (11th Cir. 1983). The request to add Plaintiffs was necessitated by the unexpected passing of Thomas Chastain.

## CONCLUSION

Appellants respectfully request that this Court (a) reverse the dismissal of Counts I and II and remand for further proceedings; (b) vacate the dismissal of this action, (c) remand with instructions to grant leave to amend and for such further proceedings as are consistent with this Court's opinion.

Respectfully submitted this 22nd day of October, 2025.

**THE BELL FIRM**

*/s/ John C. Bell, Jr.*
JOHN C. BELL, JR.
Georgia Bar No. 048600
*Counsel for Appellants*

**MANLY SHIPLEY, LLP**

*/s/ John B. Manly*
JOHN B. MANLY
Georgia Bar No. 194011
JAMES E. SHIPLEY, JR.
Georgia Bar No. 116508
*Counsel for Appellants*

38

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,798 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Rule 32-4 of the Eleventh Circuit Rules. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

This 22nd day of October, 2025.

**THE BELL FIRM**

*/s/ John C. Bell, Jr.*
JOHN C. BELL, JR.
Georgia Bar No. 048600
*Counsel for Appellants*

39

**CERTIFICATE OF SERVICE**

I hereby certify that this day I have electronically filed the within and foregoing **BRIEF OF APPELLANTS**, with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notifications of such filing to counsel of record and have served a copy via electronic mail as follows:

P. Michael Freed
Scott Eric Anderson
Cameron N. Regnery
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Scott.Anderson@fmglaw.com
Cameron.Regnery@fmglaw.com
Michael.Freed@fmglaw.com

This 22nd day of October, 2025.

**THE BELL FIRM**

/s/ John C. Bell, Jr.
JOHN C. BELL, JR.
Georgia Bar No. 048600
*Attorney for Appellants*

40